# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2009

No. 09-10203

Charles R. Fulbruge III
Clerk

ESTATE OF MARIE A MERKEL, MATTHEW R POLLARD, Independent Executor

Plaintiff-Appellant

v.

RUPERT M POLLARD

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:06-CV-1891-D

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

For this appeal, because the only issue raised is a question of Texas divorce law, the linchpin is whether our court should abstain *sua sponte*. VACATED and DISMISSED.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Drs. Marie Merkel and Rupert Pollard married in 1964. Twenty-eight years later, Merkel filed for divorce in Dallas, Texas. The divorce proceedings' extended history follows.

A.

After Merkel filed for divorce in 1992, the parties mediated a settlement; and, pursuant to it, the Dallas divorce court entered a decree in 1995, dissolving the marriage and dividing the property. Pollard appealed and filed a *lis pendens* notice, asserting a community interest in the property.

On appeal, Pollard contested the property division on several grounds, but stated in his brief that he did *not* contest the dissolution of marriage. The Texas Court of Appeals held the divorce court "erred in entering judgment pursuant to the mediated settlement agreement" and reversed and remanded. *Pollard v. Merkel*, No. 05-96-00795-CV, 1999 WL 72209, at *1 (Tex. App.—Dallas 12 Feb. 1999, no pet.) (not designated for publication).

On remand, the divorce action was tried to a jury; and the Dallas divorce court entered a second divorce decree in 2001. The jury awarded the marital home at issue here (the house) to Merkel.

Pollard again appealed, taking issue with the divorce court's failure to disqualify Merkel's attorney. The Texas Court of Appeals again reversed and remanded. *Pollard v. Merkel*, 114 S.W.3d 695 (Tex. App.—Dallas 2003, pet. denied).

In 2004, before the divorce court could act on remand, Merkel died. In 2005, the divorce court dismissed the action for want of prosecution.

B.

After Merkel died, her will was admitted to probate, with her son being appointed executor. Pollard again filed *lis pendens* notices, asserting community and homestead interests in the house. The executor moved the probate court to

cancel those notices and order Pollard to execute a request for a tax lien pay-off from the Internal Revenue Service. (The pay-off request was premised on Pollard's having failed to pay his federal income taxes while the divorce proceedings were pending. Therefore, in 1993, 1994, 1995, and 2003, the United States had filed tax-lien notices against any property Pollard owned.)

In 2005, pursuant to the executor's motion, the probate court ordered Pollard to show cause why the *lis pendens* notices should not be cancelled and why he should not be compelled to execute the pay-off request. Subsequently, that court ordered Pollard to execute the latter. Pollard refused to do so and, in October 2005, instead filed another *lis pendens* notice against the house.

That October, Pollard also petitioned the probate court to determine the status of the Merkel and Pollard marriage as of Merkel's death. That court held Merkel and Pollard were divorced when Merkel died. Pollard appealed this ruling; the appellate court held it was "not a final judgment or an appealable order" and dismissed the appeal. *Pollard v. Pollard*, No. 05-06-00375-CV, 2007 WL 1366040, at *1 (Tex. App.—Dallas 10 May 2007, no pet.). The probate proceedings apparently remain open. *See Estate of Merkel*, No. 05-0375-P3 (Prob. Ct. No. 3, Dallas County, Tex. filed 14 Feb. 2005).

## C.

In October 2006, Merkel's estate filed this federal-question action against the United States and Pollard, pursuant to 28 U.S.C. § 2410(a)(1). The estate sought to quiet title to the house and "establish that Pollard has no interest in the . . . House and, therefore, the . . . House is not subject to any federal tax lien issued against Pollard or his property". Pollard counter-claimed, seeking a declaration that he and Merkel were married as of her death and that, accordingly, Pollard owned an undivided one-half interest in the house.

The parties filed cross-motions for summary judgment on whether Merkel and Pollard were married when Merkel died. The estate contended: Merkel

and Pollard were finally divorced as of the first divorce decree in 1995 because Pollard only appealed the property division. Pollard maintained: the dissolution of the marriage was not severable from the property division; and, therefore, the divorce was never final. In July 2008, the district court awarded partial summary judgment to Pollard, holding, *inter alia*, he and Merkel were married at her death. *Estate of Merkel v. Pollard*, No. 3:06-CV-1891-D (N.D. Tex. 29 July 2008).

Accordingly, the action proceeded to trial on whether Pollard had abandoned his homestead interest in the house. In January 2009, a jury returned a verdict for Pollard, finding the estate had failed to prove abandonment.

A final judgment was entered in February 2009. It provided, *inter alia*: Pollard and Merkel were married as of her death; and, Pollard had a one-half community property interest and a homestead interest in the house. *Estate of Merkel v. Pollard*, No. 3:06-CV-1891-D (N.D. Tex. 4 Feb. 2009).

## D.

In addition to the above-recounted facts and proceedings found in the record on appeal, we take judicial notice of these *five* actions pending in state court, all of which are related to Merkel and Pollard's divorce. *Pollard ex rel. Estate of Merkel v. Pollard*, No. 05-09-01087-CV (Tex. App.—Dallas filed 10 Sept. 2009) (appeal of probate court's denial of Pollard's motion for accounting); *In re Marriage of Merkel & Pollard*, No. 05-08-01615-CV (Tex. App.—Dallas filed 26 Nov. 2008) (appeal of divorce court's dismissal of divorce proceedings); *Estate of Merkel*, No. 05-0375-P3 (Prob. Ct. No. 3, Dallas County, Tex. filed 14 Feb. 2005) (administration of Merkel's estate); *Pollard v. Pollard ex rel. Estate of Merkel*, No. 05-0375-P3(A) (Prob. Ct. No. 3, Dallas County, Tex. filed 8 Aug. 2005) (petition for declaratory judgment on whether Merkel and Pollard were divorced at Merkel's death); *Pollard v. Pollard ex rel. Estate of Merkel*, No. 05-0375-P3(B)

(Prob. Ct. No. 3, Dallas County, Tex. filed 21 Oct. 2005) (Pollard's unsecured claims against the estate for various personal property).

## II.

In this appeal, the estate challenges only that part of the judgment awarded Pollard on the marital status; in short, *not* contested is that part of the judgment concerning the jury verdict (Pollard's not having abandoned his homestead interest in the house). In other words, no relief regarding tax liens, determination of property ownership, the Government's rights as to each side, or similar relief is sought. The United States has not even participated in this appeal. In essence, the *only* result of our ruling on the merits would be a decree of divorce or a declaration of marriage.

Therefore, at issue, as raised by the estate, is only a state-law question, involving an area of special state interest: domestic relations. Accordingly, of immediate concern is whether we should abstain *sua sponte* from deciding this matter. In that regard, we may do so for the first time on appeal. *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 588 (5th Cir. 1998) ("[W]e agree . . . that *Burford* abstention may be raised at any time. . . ."); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 255 (5th Cir. 1990) ("Where *Burford*-type abstention is appropriate . . . it can be ordered on appeal even if not raised in the trial court."); *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 n.16 (5th Cir. 1977) ("By its nature, the abstention issue is raised either by a defendant or by the court sua sponte.").

## A.

For obvious reasons, "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts". *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 13 (2004) (holding father lacked standing to bring a First Amendment challenge to his daughter's school's policy of reciting the Pledge of Allegiance where father was involved in an underlying custody

dispute over the daughter). Along this line, there are two ways in which federal courts may defer to state courts and thereby avoid adjudication of domestic issues.

First, under the domestic-relations exception, federal courts lack jurisdiction to "issue divorce, alimony, and child custody decrees". *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Second, even where the elements of the domestic-relations exception are not precisely met, abstention is nonetheless called for under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'". *Ankenbrandt*, 504 U.S. at 705–706 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). "Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id*. at 706.

For starters, the domestic-relations exception to federal jurisdiction is not applicable in this *federal-question action* to quiet title. As provided in *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997): "The domestic relations exception obtains from the diversity jurisdiction statute . . . and therefore it has no application where, as here, there exists an independent basis for federal jurisdiction". *Compare with Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006); *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986), *aff'd*, 484 U.S. 174 (1988). As a result, the principal question at hand is whether, pursuant to *Ankenbrandt*, *Burford* abstention controls.

The *Ankenbrandt* Court considered whether the domestic-relations exception deprived the district court of its diversity jurisdiction over a sexual-abuse tort action by a mother against her ex-husband on behalf of her children or, alternatively, whether abstention was required. *Id*. at 691. The Court held:

6

the domestic-relations exception was not met; and, further, abstention was not required because "the status of the domestic relationship [had] been determined as a matter of state law, and in any event [had] no bearing on the underlying torts alleged". *Id.* at 706.

In contrast, the parties here vigorously dispute the status of the domestic relationship—the *only issue* raised on appeal. Again, as the *Ankenbrandt* Court noted, abstention might be proper "if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties". *Id.* at 706. That is the situation at hand. (As discussed *supra*, the probate court ruled in 2005 that the parties were divorced at Merkel's death. Due to the nature of those proceedings, however, that decision was not a final judgment and, as such, did not render the issue *res judicata*. Hence, the question was at issue in, and decided by, the district court in 2008, when it granted partial summary judgment to Pollard. *See Medina v. I.N.S.*, 993 F.2d 499, 504 (5th Cir. 1993) (holding *res judicata* requires a final judgment); *Pollard v. Pollard*, No. 05-06-00375-CV, 2007 WL 1366040 (Tex. App.—Dallas 10 May 2007, no pet.) (dismissing Pollard's appeal of probate court's order holding parties divorced at Merkel's death because that order was *not* a final judgment); *see also Estate of Merkel v. Pollard*, No. 3:06-CV-1891-D, slip op. at 3 n.2 (N.D. Tex. 29 July 2008) (citing *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007)). Therefore, for our purposes, the issue is effectively undetermined by a state court.)

Moreover, whether the parties were divorced as of Merkel's death had bearing on the quiet-title action. Neither party having briefed this issue, it is unclear to what extent Pollard's marital status would affect the house being subject to the Government's liens. It *is* clear, however: if Pollard and Merkel were still married as of Merkel's death, Pollard was a surviving spouse under the Texas constitution; and, barring abandonment, he would be entitled to the

7

homestead exemption against federal taxes. *See Ferguson v. Ferguson*, 111 S.W.3d 589, 597–98 (Tex. App.—Ft. Worth 2003, no. pet.); TEX. CONST. ART. XVI, § 52; TEX. PROB. CODE ANN. § 283. Under *Ankenbrandt*, therefore, *Burford* abstention must be considered *sua sponte*.

### B.

As a prerequisite to *Burford* abstention, "timely and adequate state-court review [must be] available". *New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 361 (1989) (*"NOPSI"*). Such review of whether Merkel and Pollard were married at the time of Merkel's death is available. As previously discussed, that very issue has been decided by the Texas probate court; and, based on available court records, that ruling apparently is subject to review on appeal in state court.

The doctrine also requires that, before the court may abstain, the federal court be sitting in equity or otherwise petitioned for discretionary relief. *Id.*; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). An action to quiet title is an equitable action. *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 711 (5th Cir. 1951). Further, both parties sought declaratory judgments regarding the status of Pollard and Merkel's marriage as of her death, and such judgments are considered discretionary relief. *Quackenbush*, 517 U.S. at 719.

If, as they are here, these prerequisites are met, "a federal court . . .must decline to interfere . . . : (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern'". *NOPSI*, 491 U.S. at 361 (quoting *Colo. River*, 424 U.S. at 814). (Although *NOPSI* speaks of interference "with the proceedings or orders of state administrative agencies", the Supreme Court has "since provided more

generalized descriptions of the *Burford* doctrine", *Quackenbush*, 517 U.S. at 725; and, as such, our court has held *Burford* abstention is not limited to "where the state regulatory scheme is fully in place". *Sierra Club v. City of San Antonio*, 112 F.3d 789, 796 (5th Cir. 1997).)

Our court considers five factors to determine whether *Burford* abstention is appropriate: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review". *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009) (internal citation omitted). Each of these factors overwhelmingly favors abstention here.

Regarding the first factor, although this case nominally arises under federal law, we have held: "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed". *Sierra Club*, 112 F.3d at 795 (internal quotation marks omitted); *see also Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963 (5th Cir. 2003) (unpublished) (holding *Burford* abstention appropriate and stating: "Even though Koerner has framed his claims as arising under federal law, the underlying issues presented are purely state law issues".). The estate's federal quiet-title claim is clearly "entangled in a skein of state law". No one disputes Pollard is liable for unpaid federal income taxes; the only issue is the degree and nature of his ownership interest in the house. For this appeal, and the only issue raised for it, this issue turns entirely on Texas domestic-relations law.

For the second factor, whether unsettled issues of state law are raised, the *only* issue briefed here by both parties is, again, whether Merkel and Pollard

were married when Merkel died. The estate maintains: the divorce court's first decree was a final judgment, subject only to modification on appeal; therefore, when Pollard appealed that judgment, but failed to raise dissolution of marriage as a point of error, the appellate court lacked jurisdiction to consider dissolution of marriage. Pollard counters: although an appellate court may have the power to sever dissolution of marriage from property division, that did not occur because Pollard did not file a notice of limitation of appeal; therefore, the entire case was before the appellate court. The district court stated that Texas law contains contradictory precedent on whether the dissolution of marriage must be expressly excluded in the notice of appeal. This, therefore, is an unsettled issue of Texas state domestic law and appellate procedure.

For the third factor, the importance of Texas' interest in its own domestic-relations law is obvious. "Family relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435 (1979); *see also Begum v. Miner*, 2000 WL 554953, at *3 (5th Cir. 2000) (unpublished) (holding abstention appropriate in a case involving adoption because, *inter alia*, a State has an important interest in a "key issue of state family law"). Further, in *DuBroff v. DuBroff*, 833 F.2d 557, 562 (5th Cir.1987), our court recognized the importance of Texas' interest in its divorce law, holding *Burford* abstention was appropriate where the plaintiff alleged her ex-husband and others had violated RICO by deceiving her in a divorce settlement. (As our court noted in *Begum*, *DuBroff* was decided before *Ankenbrandt*, which narrowed the reach of *Burford* abstention in domestic-relations cases; we "therefore do not base our decision on [this] Fifth Circuit precedent[], though we note that [it is] consistent with our holding". 2000 WL 554953, at *3 n.6.)

In addition, concerning the fourth abstention factor, Texas obviously needs a coherent domestic-relations policy, and, more narrowly, a coherent policy for

when, and how, a divorce ruling may be severed on appeal. Therefore, the third and fourth factor weigh heavily in favor of *Burford* abstention.

Finally, for the fifth factor, Texas has created "a special state forum for judicial review" of divorce actions. *See* TEX. GOV. CODE ANN. § 24.601 *et. seq.* (establishing a comprehensive system of family courts). It goes without saying that these courts have the experience and expertise in Texas divorce law that federal courts lack. *See Ankenbrandt*, 504 U.S. at 704 (noting "the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of [divorce, alimony, and child custody] decrees").

Again, each of the five *Burford* factors overwhelmingly favors abstention. And, although "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a [federal] [c]ourt to adjudicate a controversy properly before it", *Colorado River*, 424 U.S. at 813 (internal quotation omitted), this married *vel non* issue arising in Texas divorce proceedings easily falls within this narrow exception. Therefore, we hold *sua sponte* that *Burford* abstention should be applied.

## III.

For the foregoing reasons, the judgment is VACATED and this action is DISMISSED.